253 N.J. Super. 459 (1992)
602 A.2d 279
MR. AND MRS. J.E., ON BEHALF OF THEIR SON, G.E., PETITIONERS-APPELLANTS,
v.
STATE OF NEW JERSEY DEPARTMENT OF HUMAN SERVICES, DIVISION OF DEVELOPMENTAL DISABILITIES, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 23, 1991.
Decided January 29, 1992.
*461 Before Judges DREIER, GRUCCIO and BROCHIN.
G. Emerson Dickman, III, argued the cause, for appellant (Dickman and Mignogna, attorneys; G. Emerson Dickman, III and Margaret S. Mignogna, on the brief).
Lisa A. Marin-Main argued the cause for respondent (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy, Assistant Attorney General, of counsel).
*462 Wilfredo Caraballo, Public Advocate, submitted a brief as amicus curiae (Sarah Wiggins Mitchell, of counsel; David B. Harris and Joseph B. Young, on the brief).
The opinion of the court was delivered by GRUCCIO, J.A.D.
This case involves the rights of a child and his parents at an administrative hearing. We conclude that the administrative hearing was adequate and that an Office of Administrative Law hearing was not necessary. We do find, however, that full disclosure was essential in this proceeding.
J.E. and E.E. are the natural parents and legal guardians (the parents) of G.E.G.E. is presently 23 years old and has a severely compromised intelligence with a long history of maladaptive, attention-seeking and destructive behavior. G.E. has been diagnosed as mentally retarded with atypical psychosis, autistic features and is a carrier of hepatitis B. In order to ensure his personal safety, G.E. requires 24-hour supervision with psychological and medical monitoring. The parents, on behalf of G.E., contest the final decision of the Administrator of the Review Conference who found the New Lisbon Developmental Center (NLDC) to be an appropriate placement for G.E.
The parents contested G.E.'s transfer from the Woods School in Pennsylvania to NLDC by filing a verified complaint and order to show cause with temporary restraints in the Superior Court of New Jersey on June 27, 1989. The complaint and order to show cause sought to have the Division of Developmental Disabilities (DDD) fund the cost of G.E.'s placement at the Woods School in Langhorne, Pennsylvania. The parents assert that this cost is less than the cost of keeping G.E. at NLDC. G.E.'s placement at the Woods School had been funded by the Fairlawn Board of Education but expired on June 30, 1989, when G.E. reached 21 years of age. Upon reaching majority, a student is no longer eligible for educational services funded through his local board of education.
*463 On June 30, 1989, Judge O'Halloran signed a modified order with temporary restraints which required DDD to fund G.E.'s placement at Woods School until July 10, 1989, or until G.E. was placed at the NLDC, whichever occurred sooner. Immediately thereafter, DDD offered placement for G.E. at NLDC beginning July 6, 1989, and informed the parents that payment to the Woods School would cease on that date. G.E. was subsequently moved to NLDC where he has continuously resided until the present. Thereafter, the parents withdrew their action in the Superior Court and filed the present appeal contesting G.E.'s placement at NLDC. Appeals from administrative action must be taken to this court. R. 2:2-3(a)(2).
On November 1, 1989, the parents requested an informal conference with the DDD concerning G.E.'s placement pursuant to N.J.A.C. 10:48-1.3. Of primary concern to the parents was the appropriateness of G.E.'s placement, care, development goals and routine activities. The parents requested the immediate return of G.E. from NLDC to the Woods School.
On January 11, 1990, an informal conference held at NLDC was conducted by Philip V. Conti, Supervising Residential Services Specialist. Plaintiffs presented an analysis prepared by F. Charles Mace, Ph.D.,[1] which compared the physical facilities and the habilitative programs of both the Woods School and NLDC.
Dr. Mace's report described NLDC as a large, state-operated care facility that housed over 700 individuals and had a stark, out-dated institutional atmosphere. In comparison, the Woods School was an historic, privately-operated facility which allowed G.E. to play outdoors and to experience a more normal home/work routine.
Dr. Mace's summary stated that NLDC would represent a more restrictive placement for G.E. since there were two-and-one-half times more clients at NLDC than at the Woods School; *464 G.E. would move from a more normalized home-like setting to a stark institutional atmosphere; and regular access to the community which G.E. has experienced for many years would end. Dr. Mace did find, however, that the quality of the habilitative programming at Woods School and NLDC were comparable.
The DDD denied the request for transfer of G.E. from NLDC to the Woods School. The DDD based its decision on the fact that G.E.'s needs were not out of the ordinary and that they were, in fact, being met by the staff at NLDC.
The parents filed their request for an appeal from the decision pursuant to N.J.A.C. 10:48-1.4. The appeal asserted that the Woods School was the most appropriate placement for G.E. as it would maximize his developmental potential in the least restrictive environment. An Administrative Review Conference was held and Administrative Review Officer Russell Carlini presided. Carlini set forth that the sole issue to be determined was the appropriateness of G.E.'s placement at NLDC. Conti, who conducted the informal conference, presented the case for DDD.
Counsel for the parents objected to the dispute's classification as "uncontested." An uncontested case is one which involves neither a statutory nor a constitutional right to a hearing. Such a hearing is termed "informal" and is designed to afford the parties the opportunity to present their positions. A formal hearing is one which is adjudicatory and determines the rights, duties, obligations, privileges or benefits of the interested parties.
G.E.'s social worker was examined and testified that G.E. got along very well at NLDC. The habilitation and planning coordinator, who was also the author of G.E.'s Individual Habilitation Plan (IHP) was likewise examined. The coordinator indicated that G.E.'s plan at the Woods School contained five goals but was abbreviated at NLDC due to the fact that initially G.E. was not responding to the workers at NLDC. The coordinator indicated that G.E. was not experiencing any maladaptive behaviors *465 or problems at NLDC and concluded that G.E.'s needs were being met there.
During the hearing, counsel for the parents asked the assistant director of residential services whether the contents of a client's file could be made available to a client's guardian. The director responded affirmatively, but then took exception and stated that if the documents were not public records, they would not be available to the client's guardian.
Carlini, in his decision of July 20, 1990, found that no documented evidence existed which proved regression in G.E. since his placement at NLDC, nor any indication that G.E.'s present needs would not be met at the Center. Carlini concluded that the parents did not establish that the Division acted in an arbitrary and capricious manner and failed to show the Woods program was more appropriate than was NLDC for G.E.'s particular needs. Carlini, therefore, recommended that G.E.'s placement in the NLDC be continued.
The parents submitted their exceptions to the decision on August 22, 1990, pursuant to N.J.A.C. 10:48-1.6(c)(9). The exceptions noted the parents' dissatisfaction with the appeal system utilized by the DDD. In particular, the parents objected to the lack of subpoena power, the denial of access to inter-agency communications, the use of agency personnel as hearing officers during the administrative review conferences, the classification of their case as "non-contested," and the failure to have their case heard by an administrative law judge as a formally contested matter.
The parents first argue that their case should have been heard by an administrative law judge as a contested matter. The Administrative Procedure Act defines a contested case as
a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after an opportunity for an agency hearing....
*466 N.J.S.A. 52:14B-2(b). The plain language of the section sets forth that "contested cases" are those limited to matters for which a hearing is required by statute or constitutional provision. In re Orange Savings Bank, 172 N.J. Super. 275, 286, 411 A.2d 1150 (App.Div. 1980). Nothing in the relevant acts or corresponding regulations mandates an administrative hearing for the placement of a recipient in a particular center. In the absence of authority entitling petitioners to a hearing on this issue, the matter may not be defined as contested. See N.J.S.A. 52:14B-2(b). Therefore, the ruling of the Director of the DDD that this case proceed through administrative hearings as a non-contested matter was proper pursuant to statute, and is not subject to reversal.
Director Nicholas issued the Division's final decision on September 24, 1990, which stated that DDD had provided G.E. with the most appropriate placement at NLDC. The decision stated that DDD had sustained its burden of proving the appropriateness of NLDC as a placement for G.E. and that the parents had failed to meet their burden of proof as to why the Center did not fulfill G.E.'s needs.
The parents have consistently contended that G.E. is entitled to placement at the Woods School rather than at NLDC. They premise their argument upon N.J.S.A. 30:4-25.6 which provides, in pertinent part:
That the commissioner shall, upon proper application for admission, forthwith admit the eligible mentally retarded person, and provide him with the appropriate functional service available. In the event that the functional service which has been specified as most appropriate from time to time is not immediately available, the Commissioner shall provide alternate service and, at the request of the applicant, shall also place the eligible mentally retarded person on a waiting list for the preferred service pending its availability.
G.E. has been determined eligible for functional services from the DDD pursuant to N.J.S.A. 30:4-25.1, et seq. "Functional services" are defined as "those services and programs in the department available to provide the mentally retarded with education, training, rehabilitation, adjustment, treatment, care and protection." N.J.S.A. 30:4-23; N.J.S.A. 30:4-25.1(a)(3). *467 The decision as to the type and availability of services that any DDD client receives is statutorily allocated to the Commissioner. N.J.S.A. 30:4-25.4. Pursuant to N.J.S.A. 30:1-11, 1-12, the Commissioner is explicitly given the discretion to determine the specific type of services that any client will receive.
The parents are correct in their assertion that each person institutionalized in a developmental center has the legal right to services which are most appropriate to his needs and which are least restrictive of his or her personal liberty. N.J. Ass'n for Retarded Citizens v. Human Services, 89 N.J. 234, 251, 445 A.2d 704 (1982). This standard is reflected in the governing statute. Each patient receiving treatment has, among other rights, a right to "the least restrictive conditions necessary to achieve the purposes of treatment." N.J.S.A. 30:4-24.2e(2); N.J.S.A. 30:6D-9. See N.J. Ass'n for Retarded Citizens v. Human Services, 89 N.J. at 250-51, 445 A.2d 704 where the Court said: "In this State, we do not set people adrift because they are victims of misfortune. We take care of each other." Id. at 252, 445 A.2d 704. There is no precedent, however, for the parents' assertion that the recipient may choose the service which he or she prefers or deems most appropriate. The DDD demonstrated, through the evidence presented at the various hearings, that NLDC is an appropriate placement for G.E. Indeed, the parents, themselves, have conceded that G.E.'s plan at NLDC is appropriate for his needs.
Our role in reviewing the decision of an administrative agency is limited. Precedent indicates that the decision of an administrative agency will not be reversed unless it is arbitrary, capricious or unreasonable or is not supported by substantial credible evidence in the record as a whole. Barry v. Arrow Pontiac, 100 N.J. 57, 71, 494 A.2d 804 (1985) (quoting Gloucester Cty. Welfare Bd. v. N.J. Civ. Serv. Comm'n, 93 N.J. 384, 391, 461 A.2d 575 (1983)). Our judicial review is restricted to three inquiries: (1) whether the agency action violates the enabling acts, express or implied legislative policies; (2) whether *468 there is substantial evidence in the record to support the findings upon which the agency based application of legislative policies; and (3) whether, in applying the legislative policies to the facts, the agency clearly erred by reaching a conclusion that could not reasonably have been made upon a showing of the relevant factors. Public Serv. Elec. v. N.J. Dep't of Envtl. Protection, 101 N.J. 95, 103, 501 A.2d 125 (1985).
We are confronted with conflicting desires in this matter and are sensitive to the needs of the parties involved. Our Legislature has clearly set forth the public policy of this State by directing that "the human dignity and the moral and constitutional rights of [mentally disabled] individuals be upheld and protected." N.J.S.A. 30:4-24(3). In order to satisfy constitutional due process and effectuate the intent of the Legislature, we feel that both parties here must be apprised of all facts, be they conflicting or supportive of any position.
The process involved in Administrative Review Conferences and hearings, which are designed to determine appropriate placement for mentally disabled citizens, has been endorsed by us in Matter of Commitment of B.R., 202 N.J.Super 182, 494 A.2d 333 (App.Div.), certif. den., 102 N.J. 354, 508 A.2d 224 (1985). There, we stated that the "review procedure set out in N.J.A.C. 10:48-1.1 is not necessarily futile or unfairly lengthy but rather provides an expeditious method of resolving questions of eligibility for [DDD] services and creating a record for appellate review." Id. at 186.
The record before us reveals that full disclosure was necessary here in order to facilitate the fair presentation of the parents' complaint. Although the traditional adversarial relationship does not exist in this type of administrative process, see N.J. Ass'n for Retarded Citizens v. Human Services, supra, 89 N.J. at 252, 445 A.2d 704, conflicts, nonetheless, exist. This is necessarily true in light of the individual's interest contrasted with the agency goal of serving the community as a whole. This arena of dispute is particularly sensitive *469 and deserves a full revelation of pertinent information. The need for the disclosure of relevant facts in formal or informal administrative proceedings is emphasized in N.J.A.C. 1:1-10.1(a) which gives litigants access to all pertinent facts which tend to either support or undermine their position or that of their adversary. We are guided by this statute in granting these discovery requests, and state that the agencies must weigh the need for the information and the extent to which the information is within the control of the party. So long as the request is not unduly burdensome or prejudicial, the material sought should be turned over to the requesting party. See N.J.A.C. 1:1-10.1(b).
Here, we find fairness requires that any inter-office memoranda concerning G.E., included in his file, is discoverable and should be given to the parents so that they may be fully informed as to the pros and cons of any anticipated action. In the interest of fairness, and in conformity with the Right to Know Law,[2]N.J.S.A. 47:1A-1, the agency may not shroud itself in a statutory cloak to evade a full review of its decision-making process. Therefore, we direct the DDD to make full disclosure of all information available both supporting and contrary to its decision. This ruling fosters the goal of providing families with the factors which are weighed in important placement decisions, thus implementing their understanding and acceptance.
Therefore, while we affirm the DDD's decision, on the present record, we direct that it make full disclosure of its information pertaining to G.E., including inter-office communications. To that end, we grant the parents' the right to examine the inter-office communications and, in the event they consider it legally pertinent to this matter, we grant them the right to make further application to the DDD and, if warranted, *470 request reconsideration based on the ramifications of the undisclosed inter-office memoranda.
Affirmed but remanded for action consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Dr. Mace was hired by the parents to evaluate the Woods School and NLDC.
[2] The Right to Know Law provides citizens with a statutory right to inspect public documents, which are defined as those required by law to be prepared or filed with a public official.