GLOUCESTER COUNTY WELFARE BOARD, RESPONDENT, v. STATE OF NEW JERSEY CIVIL SERVICE COMMISSION, APPELLANT.

Argued March 7, 1983—Decided June 21, 1983.

386

*Mark J. Fleming,* Deputy Attorney General, argued the cause for appellant (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Janet Share Zatz,* Deputy Attorney General, on the brief).

*Neil I. Sternstein* argued the cause for respondent (*Sternstein & Sternstein,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

We are called upon to decide whether the Civil Service Commission acted arbitrarily in refusing to permit V. Gail Denton to take the open competitive examination for the position of Deputy Director of Welfare in Gloucester County. She did not satisfy the prescribed educational requirements, but sought to substitute other educational qualifications. The Appellate Division agreed with her position, holding that the Commission's actions were unreasonable. Because the Appellate Division improperly reviewed the action of the Civil Service Commission, we reverse.

I

In January 1981, the defendant, Civil Service Commission, announced an open competitive examination for the position of Deputy Director of Welfare.[1] The announcement by the Department of Civil Service listed the following educational and work-experience requirements:

> Possession of a Master's Degree in social work or social welfare or public administration or business administration from an accredited college or university plus four years of responsible full-time paid experience in an administrative or management position, where there is a responsibility for planning, directing and coordinating the work of a substantial staff working in several units or performing several separate functions.

---

[1] The notice listed two openings for the position of Deputy Director of Welfare. One was open to residents of Gloucester County and the other to residents of Salem County.

Denton, who had been serving as Deputy Director on an interim basis, applied to take the examination. She did not have a master's degree in social work, social welfare, public administration or business administration from an accredited college or university. She did have a law degree from the Temple University School of Law.

The Department of Civil Service rejected Denton's application because she failed to satisfy the "minimum requirements in education." Denton appealed this ruling to the Department on the ground that "the Law degree is equivalent or superior to the masters degrees listed as preparation for this position." In support of this contention Denton listed several of her law school courses that were related to the subject areas of the acceptable master's degrees. Finding the original determination of ineligibility to be correct, the Assistant Director of Examinations of the Civil Service Commission stated that "[w]hile there may be some areas of overlap" between courses taken by Denton in law school and those required in the relevant master's degree programs, "the programs are fundamentally different in approach, preparation and eventual application."

Denton thereafter appealed to the Director of Examinations of the Civil Service Commission, who maintained that he did not have the authority to accept substitutes for degree requirements unless such substitutes were "specifically allowed in the examination announcement." Finding no provision for the substitution of a law degree in the announcement for the Deputy Director position, the Director of Examinations rejected Denton's claim.

Denton's final administrative appeal was heard by the Civil Service Commission. In its decision the Commission stated that the announced educational requirements presented a "broad spectrum of academic achievement" necessary for the position, that the "requirements were developed in consultation with representatives of the State Division of Public Welfare and various Welfare Boards," and that the announcement made no

provision for degree substitution. Furthermore, it noted that the record lacked sufficient documentation that Denton's law degree was equivalent to one of the master's degrees required for the position. Accordingly, the Commission denied her appeal.

The Gloucester County Welfare Board[2] appealed to the Appellate Division, which held that the Commission had acted unreasonably and concluded that "[a]n examination of the job specifications in this case plainly reveals that a law degree is sufficient to satisfy their intent and purpose." The Appellate Division noted that the diversity of subject areas covered by the acceptable degrees evidences a requirement not of specific knowledge but of formal education in an area relevant to the position. It ruled that the Commission erroneously determined that there was insufficient evidence to warrant a finding that Denton's law courses fulfilled the educational requirements.

We granted the Commission's petition for certification. 91 N.J. 570 (1982).

## II

The function of administrative agencies and their place in the governmental scheme are well established. Agencies like the Department of Civil Service are properly categorized as part of the executive branch of government in that they "exercise executive power in administering legislative authority selectively delegated to them by statute." *City of Hackensack v. Winner*, 82 N.J. 1, 28 (1980). The administrative process, however, involves aspects of all three branches of government. The process has been described as a "concentration of powers" com-

---

[2] No one has questioned the right of the Gloucester County Welfare Board to take this appeal, and we do not address that issue. The Board did not appear in any of the prior administrative proceedings. In its brief before the Appellate Division, the Board asserted that it had a substantial interest in assuring that the most qualified applicant filled the position of Deputy Director.

prised of "an admixture of law-making, law-enforcement and law-interpretation." J. Jacobs, "Administrative Agencies, Their Status and Powers," in *II State of New Jersey Constitutional Convention of 1947* 1431, 1436 (S. Goldmann & H. Crystal eds. 1951). Similarly, Dean Landis characterized administrative power as the "full ambit of authority necessary for [the administrative agency] . . . to plan, to promote, and to police, [and] it presents an assemblage of rights normally exercisable by government as a whole." *The Administrative Process* 15 (1938). In the performance of its delegated responsibility an agency formulates policy and investigates and adjudicates controversies. In discharging its specialized tasks the agency must gather and analyze relevant data and material. As a result, the administrative agency acquires expertise in technical matters and a comprehensive knowledge of its particular field. L. Jaffe, *Judicial Control of Administrative Action* 25–26 (1965). It is not surprising, therefore, that the "vast majority of public administrative theorists have argued persuasively that although general political controls should guide administrative decision making, daily and routine administrative work is best handled by objective and professional administrators." K. Warren, *Administrative Law in the American Political System* 200 (1982).

Courts, on the other hand, "are constitutionally-founded, independent and impartial adjudicative tribunals constituted to hold and exercise the judicial power which emanates directly from the Constitution." *City of Hackensack,* 82 *N.J.* at 29. Recognizing the executive function of administrative agencies, courts are aware that the judicial capacity to review administrative actions is limited.

In furtherance of this policy, courts have enunciated several principles. The grant of authority to an administrative agency is to be liberally construed to enable the agency to accomplish the Legislature's goals. *United Bldg. & Constr. Trades Council v. Mayor of Camden,* 88 *N.J.* 317, 325 (1982). A strong presumption of reasonableness accompanies an administrative agency's exercise of statutorily-delegated responsibility. *City of Newark*

*v. Natural Resources Council,* 82 *N.J.* 530, 539, *cert.* denied, 449 *U.S.* 983, 101 *S.Ct.* 400, 66 *L.Ed.*2d 245 (1980). "[C]ourts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable .... " *New Jersey Guild of Hearing Aid Dispensers v. Long,* 75 *N.J.* 544, 562–63 (1978). "[T]he generally accepted gauge of administrative factual finality is whether the factual findings are supported by substantial evidence." *Freud v. Davis,* 64 *N.J.Super.* 242, 246 (App.Div. 1960). That issue has sometimes been stated: "Could a reasonable man, acting reasonably, have reached the decision sought to be reviewed, from the evidence found in the entire record, including the inferences to be drawn therefrom?" *Id.* Justice Pollock summarized the judicial review role as follows:

> Courts have a limited role in reviewing a decision of an administrative agency. Ordinarily, an appellate court will reverse the decision of an administrative agency only if it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole. [*Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80 (1980)]

### III

No one quarrels with the need for the stated educational qualifications, namely, a master's degree in social work, social welfare, public administration or business administration from an accredited educational institution. The particular judicial question is whether the Civil Service Commission's refusal to broaden the educational qualifications for the position of Deputy Director of Welfare to permit a substitute for the listed educational requirements constituted arbitrary and capricious action. In considering that question the limited scope of judicial review must be borne in mind. Ordinarily a determination of the Civil Service Commission will not be upset unless "it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated legislative policies expressed or implicit in the civil service act." *Campbell v. Civil Serv. Dep't,* 39 *N.J.* 556, 562 (1963).

The Department of Civil Service, an integral part of the executive branch of state government, *N.J.S.A.* 11:1–1, is charged with administering and enforcing the civil service provisions governing most county employees in those counties that have chosen to be governed by the civil service act. *N.J.S.A.* 11:19–2. The Department is headed by the Civil Service Commission. *N.J.S.A.* 11:1–1. The Chief Examiner and Secretary, who is appointed by the president of the Commission with the approval of the Governor, *N.J.S.A.* 11:2–1,[3] administers the work of the Commission. *N.J.S.A.* 11:2–6.[4] The Chief Examiner and Secretary must "be thoroughly familiar with the principles and methods of personnel administration generally recognized by those in charge of employment work for large public and private employers and skilled and experienced in personnel administration." *N.J.S.A.* 11:2–3.[5] A further statutory qualification is that he must be "known to be in sympathy with the systematic application of merit and good business principles in the handling of personnel matters in connection with positions in the public service that are nonpolitical in character." *N.J.S.A.* 11:2–3.[6]

The Commission's task is "to assure the continuance of the merit system and to provide a modern personnel system, thereby promoting efficiency in the conduct of public business and assuring fair and impartial treatment for all applicants for employment and all employees in the classified service." *N.J.*

---

[3]While the matter was pending before us the act was amended to abolish the position of Chief Examiner and Secretary and to transfer the powers and responsibilities of that office to the President of the Commission. *L.*1982, *c.* 181. Several sections, including *N.J.S.A.* 11:2–1 to 11:2–3, inclusive, and *N.J.S.A.* 11:2–5 to 11:2–7, inclusive, were repealed. The President was authorized to appoint a deputy commissioner who had to be "qualified by training and experience in personnel management and administration ...." *L.*1982, *c.* 181, § 2.

[4]*See supra* n. 3.

[5]*See supra* n. 3.

[6]*See supra* n. 3.

*A.C.* 4:1–1.2. The Civil Service Commission prepares the classifications of employees in the classified service of the counties. *N.J.S.A.* 11:24–1. These classifications must provide "definite specifications and standards of services, grades, duties, [and] qualifications . . ." that will aid "in establishing uniformity and modern business methods in public employment and [that will] further strengthen and simplify civil service administration throughout the state." *N.J.S.A.* 11:24–3. The Chief Examiner and Secretary "may refuse to examine an applicant . . . who [l]acks any of the established preliminary requirements for examination or position or employment for which he applies . . . ." *N.J.S.A.* 11:23–2.[7]

The statutory authorizations, requiring the Commission to fix qualifications for employment, to carry out the mandate of nonpolitical appointment on a merit basis, and to simplify and unify civil service administration throughout the state, have been restated in further detail in the Commission's regulations. These regulations, promulgated in accordance with a legislative authorization, *N.J.S.A.* 11:1–7, provide that the Commission shall establish and maintain specifications for each class of positions. *N.J.A.C.* 4:1–6.1(a)(2)(ii). The Chief Examiner and Secretary administers the classification plans approved by the Commission and reclassifies positions "to reflect current conditions as determined by job audit or job description." *N.J.A.C.* 4:1–6.2(a)(2).[8] The regulations also provide that notices of open competitive examinations shall be given "at least two weeks before the closing date for filing applications" in the Civil Service Announcement Bulletin, *N.J.A.C.* 4:1–8.3(a)(2), and that the availability of the Bulletin shall be advertised "at least once in newspapers of general circulation throughout the State . . ." for positions in local government services, *N.J.A.C.* 4:1–8.-3(a)(3)(ii). The notices must include the "[e]stablished minimum

---

[7] *See supra* n. 3.

[8] *See supra* n. 3.

qualification requirements for admission of applicants." *N.J. A.C.* 4:1–8.3(c)(4). "In order to qualify for open competitive examination, an applicant must . . . [m]eet all the requirements specified in the official announcement of the examination." *N.J.A.C.* 4:1–8.8(a)(2). The Chief Examiner and Secretary is directed to reject the application of any prospective employee who "[l]acks the established qualification requirements for the positions or employment for which he applies." *N.J.A.C.* 4:1–8.-14(b)(1).[9]

The educational qualifications for the position of Deputy Director of Welfare were developed by the Commission after consultation with the State Division of Public Welfare and various welfare boards throughout the State. These educational requirements represent established administrative policy and are applied throughout New Jersey. As previously noted, the reasonableness of these standards is not challenged. Rather, the contention is that a law degree, which was obtained after satisfactory completion of certain law courses, is the equivalent of the prescribed educational qualification and that therefore the Commission should have permitted a substitution.

The core of the Commission's decision is contained in the following excerpt from its opinion:

> The Commission finds that the announced educational requirements for the examination at issue present a broad spectrum of academic achievement on a Master's degree level which would provide necessary background to function in the high level administrative position at issue and makes no provision for substitution of related degrees. Further, these requirements are uniformly administered, being part of the applicable job specification, and were developed in concert with the New Jersey Division of Public Welfare.
>
> The record, as presented, lists several law school courses which appellant contends shows [sic] an equivalent or similarity to those courses which would support a Master's degree found in the announced requirements. This presentation lacks any substantive penetration of this allegation by way of documentation through course catalogue comparison or appropriate academic corroboration. The Commission in accordance with its prior decisions . . . finds that Ms. Denton was properly declared ineligible for the instant examination.

[9] *See supra* n. 3.

There are several reasons why the Commission's action should be sustained. It is necessary, in considering the prescribed educational qualifications, to be mindful of the duties of the Deputy Director. Those duties involve assisting the Director in planning, organizing, developing and directing varied county welfare programs; assisting in developing, installing and revising administrative policies and procedures; supervising the entire staff; consulting with supervisors with reference to the work of their subordinates including the social work staff; giving suitable assignments and instructions to employees; preparing reports; maintaining liaison with civic organizations; and "assisting in directing the establishment and maintenance of records and files."

■ The Commission fixed the educational requirements necessary to perform these duties to be a master's degree in social work, social welfare, public administration or business administration. The Commission also required four years of responsible experience in an administrative or management position "where there is a responsibility for planning, directing, and coordinating the work of a substantial staff ... performing several separate functions." In addition to this education and experience the Commission required a knowledge of laws of New Jersey and agency regulations in the area of human services and of modern social case work theory and approved practices. It is surely not unreasonable for the Commission in the exercise of its judgment to have concluded that acquiring a law degree would not provide one with the requisite knowledge, skills and abilities to fulfill the duties of Deputy Director of Welfare with its special emphasis on administration and social services. The Commission's familiarity with the duties and job specifications were the predicate for its determination of the required educational background and experience. Its expertise should be respected. *See New Jersey Tel. Co. v. State Dep't of Pub. Util.*, 162 *N.J.Super.* 60, 77 (App.Div.1978); *In re Application of Howard Sav. Bank,* 143 *N.J.Super.* 1, 11 (App.Div.1976); *Shahmoon Indus., Inc. v.*

*Dep't of Health,* 93 *N.J.Super.* 272, 282 (App.Div.1966), certif. denied, 49 *N.J.* 358 (1967).

■ We find nothing arbitrary or unreasonable in adherence to uniform minimum standards for determining eligibility of each applicant for a competitive examination. Substitution in the manner requested would require "focusing the administration of the program on an individual basis." *Dougherty v. Human Serv. Dep't,* 91 *N.J.* 1, 9 (1982). This would further entail not only a close study and analysis of each applicant's educational background, but also a review of various courses at particular institutions. Such reviews would occasion a comparison of the subject matter and academic approach with that given by accredited colleges in their curricula leading to the master's degrees. The administrative burden of making examinations and analyses of educational courses offered throughout the United States and in foreign countries could be a heavy one. Undoubtedly it would hamper the efficient and rapid filling of vacancies.[10]

■ A fundamental purpose of Civil Service, to assure objective appointments based on merit, is furthered if the minimum eligibility requirements are demanded of all applicants. Use of educational equivalency disserves this goal, and the Commission properly exercised its authority in this respect by not providing for substitution. The action in this case is not unique. The Commission has brought to our attention other situations in

---

[10]If that course were to be followed, the public announcement of the examination would have to advise the applicant of a right to submit substituted educational training. Moreover, such a change would require that a new examination be given for the position of Deputy Director of Welfare in this case, so that everyone who believes he has educational equivalency might apply. Ms. Denton's applications for a stay had been denied and the eligibility list formed. She had been serving as acting Deputy Director on a "provisional" basis, but the Commission had ordered that appointment be terminated. *See N.J.A.C.* 4:1–14.2(b) (providing that a person who does not possess minimum qualifications may not receive a provisional appointment). Ms. Denton was subsequently hired by the Welfare Board for another position.

which it has similarly adhered to this policy. *See, e.g., In re Allen,* PC 23 (October 7, 1980), aff'd *sub nom. Mercer County Welfare Bd. v. Civil Serv. Comm'n,* No. A–1201–80–T4 (App.Div. filed October 5, 1981) (Commission ruled that applicant who possessed only a bachelor's degree was ineligible for promotional examination for position of Deputy Director of Welfare because position required a master's degree). It is therefore evident that the Commission has considered the issue of substitution for announced qualifications in this and other cases.

The Commission's policy is clear. It has set forth the minimum requirements: a master's degree in social work, social welfare, public administration or business administration and four years of full time experience in an administrative or management position. A qualified applicant might have more experience or a doctorate degree in any one of the required fields or perhaps more than one master's degree in these same fields. What the plaintiff seeks to do is to substitute a law degree for those qualifications. However, the Commission's announcement did not provide for any substitution.

The Commission also pointed out that plaintiff's contention suffered from another fatal defect. The plaintiff assumed that the courses she took in law school were the same or similar to those given in a graduate course leading to a master's degree in one of the four designated fields. The record contains no evidence establishing that fact. The Commission's finding that plaintiff's "presentation lacks any substantive penetration of this allegation [of equivalency] by way of documentation through course catalogue or appropriate academic corroboration" is completely and fully supportable. The plaintiff has not met her burden of showing that the Commission acted arbitrarily, capriciously or unreasonably.

A converse situation arose in *Flanagan v. Civil Serv. Dep't,* 29 *N.J.* 1 (1959). The announced qualifications for applicants desirous of becoming Chief Probation Officer of Morris County included seven years of professional experience in probation,

parole or related fields dealing with the rehabilitation of criminal offenders or juvenile or domestic relations work. The plaintiff contended that the qualifications were too broad in that prior experience should have been limited to probation. Justice Francis, writing for a unanimous Court, rejected this position. He commented that "[i]n the field of civil service employment, administrative agents who are authorized to make decisions of this type are invested with a broad discretion and the courts will not interfere with their actions unless they are clearly arbitrary and unreasonable." *Id.* at 9. He disposed of the substantive contention in the following language, which bears repeating:

> Here, the record does not contain any material of sufficient substance to warrant the formulation of a judgment that his decision was arbitrary either as to the open examination or as to the job requirements to be met as a condition precedent to admission to the examination. It is important to the efficient functioning of the public service employment program that "[c]ourts should let administrative boards and officers work out their problems with as little judicial interference as possible. They may decide a particular question wrong—but it is their question. [They are] vested with a high discretion, and its abuse must appear very clearly before the courts will interfere." *Maxwell v. Civil Service Commission*, 169 *Cal.* 336, 146 *P.* 869 (Sup.Ct.1915). If there is any fair argument in support of the course taken or any reasonable ground for difference of opinion among intelligent and conscientious officials, the decision is conclusively legislative, and will not be disturbed unless patently corrupt, arbitrary or illegal. Doubts held by the court as to the wisdom of the administrator's decision do not alter the case. [*Id.* at 12]

We have disapproved of less intrusive judicial penetration into the administrative process. In *Dougherty v. Human Serv. Dep't*, 91 *N.J.* 1 (1982), Justice O'Hern, in writing for the Court, stated that the judiciary had no authority to waive a requirement for financial medical assistance established by the Division of Medical Assistance and Health Services. He observed that

> a basic tenet of judicial review is that courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as that action is statutorily authorized and not otherwise defective because arbitrary or unreasonable. [*Id.* at 12]

The Legislature has authorized the Department of Civil Service to promulgate and enforce educational qualifications for positions in the classified service, including that of the Deputy Director of Welfare. *See N.J.S.A.* 11:1–7. The reasonableness

of those qualifications has not been challenged. The Commission has broad discretion in this area and the record does not support a finding that the Commission acted arbitrarily and capriciously in not permitting substitutions for the educational requirements. The Appellate Division, in deciding that the educational qualifications should be broadened, substituted its wisdom and judgment for that of the Commission. In doing so, it erred.

The judgment of the Appellate Division is reversed.

HANDLER, J., dissenting.

Gail Denton, the recipient of a law degree, was provisionally appointed Deputy Director of Welfare in Gloucester County and sought to compete for permanent appointment in an open examination to be given by the Department of Civil Service. The educational requirement for the position contained in the Department's Notice of Examination was "a Master's Degree in social work or social welfare or public administration or business administration from an accredited college or university...." Denton's timely application for the open examination was rejected by the Department because she was "below minimum requirements in education."

Denton sought to reverse this determination through the administrative appeals process, arguing that her law degree was "equivalent or superior to the masters degrees listed" and noting that much of her law school curriculum related to social work, public administration and business. She contended that

the basis for the qualifications is to ensure that candidates for the position are educationally prepared. I don't believe that there could be a question as to whether I was educationally prepared to be Deputy Director, especially if you compare the curriculum for the Masters degrees listed with my curriculum at law school, and the Civil Service job description for Deputy Director.

After administrative appeals to the Department's Director and Assistant Director of Examinations were unsuccessful, Denton sought relief from the Civil Service Commission, which also rejected her claim. The Commission's written opinion noted that in other instances "the Civil Service Commission has held

that the concept of substitution of other than the specified degrees would not be applicable to stated requirements for Welfare Department positions."[1] The Commission found

> that the announced educational requirements for the examination at issue present a broad spectrum of academic achievement on a Master's degree level which would provide necessary background to function in the high level administrative position at issue and makes no provision for substitution of related degrees. Further, these requirements are uniformly administered, being part of the applicable job specification, and were developed in concert with the New Jersey Division of Public Welfare.

> The record, as presented, lists several law school courses which appellant contends shows [sic] an equivalence or similarity to those courses which would support a Master's degree found in the announced requirements. This presentation lacks any substantive penetration of this allegation by way of documentation through course catalogue comparison or appropriate academic corroboration. The Commission in accordance with its prior decisions, as set forth above, finds that Ms. Denton was properly declared ineligible for the instant examination.

In upholding the Commission's action, the majority of this Court stresses that the Commission's refusal to accept degrees other than those listed in the examination announcement was a reasonable exercise of its administrative responsibility to ensure the efficiency of the Civil Service. Although I believe that the Commission has the rightful authority to institute a policy restricting the substitution of degrees, the nature of the policy that it has adopted is by no means clear. The Commission's decision in this matter appears initially to indicate that no substitution of degrees is permitted in Welfare Department

---

[1]The Commission cited four of its prior decisions as precedents for a no-degree substitution rule. Two of these decisions involved candidates who failed to satisfy the minimum requirement for prior relevant experience; these decisions do not directly address the degree substitution question. In the other two cases, the Commission refused to permit individuals with Bachelor's degrees to be promoted to positions that required Master's degrees. *In the Matter of Allen,* PC 23 (October 7, 1980), aff'd on other grounds, *sub nom. Mercer Cty. Welfare Bd. v. Civil Serv. Comm'n,* No. A–1201–80–T4 (App.Div. filed October 5, 1981); *In the Matter of Dietrich and Chrizanowski,* PC 3605B and PC 3606B (July 28, 1981). Because these individuals had only Bachelor's degrees, they were unable to claim that their degrees met the minimum requirements. Instead, they unsuccessfully sought a waiver of the educational requirement, not a substitution of an equivalent or similar degree for the required degree.

positions. But it then finds that Denton failed to establish that her law school courses "show[ed] an *equivalence or similarity* to those courses which would support a Master's degree found in the announced requirements." (Emphasis added.) Similarly, the Director of Examinations had found that he "simply d[id] not have authority to accept substitutions which are not specifically allowed in the examination announcement" while the Assistant Director had rejected Denton's claim because the law degree and the listed master's degrees were "fundamentally different in approach, preparation and eventual application." The inference that Denton could have been eligible to compete for this position if she had made a sufficient showing of "equivalence or similarity" runs counter to the Commission's professed no-substitution rule.

This uncertainty as to the parameters of the agency's policy is aggravated by the apparent conflict between an absolute prohibition on the substitution of degrees and the Commission's own regulations governing examinations. *N.J.A.C.* 4:1–8.1 *et seq.* Under the Commission's rules, the educational requirements announced in the Notice of Examination are the "established *minimum* qualifications requirements...." *N.J.A.C.* 4:1–8.-3(c)(4) (emphasis added). If the master's degrees listed in the examination announcement represent minimum qualifications, the Commission is obligated to determine whether Denton's law degree meets or exceeds this minimum. An absolute no-substitution policy would contravene the intent of this regulation because applicants whose educational qualifications equalled or exceeded the minimum qualifications would be excluded from competing in open examinations.

It is difficult for this Court to resolve the ambiguity as to the nature of the substitution policy established by the Commission in the adjudicatory process and its interrelationship with the agency's regulations. Because a broad range of practices represent permissible exercises of the agency's discretion, the confusion and conflict is best resolved on remand to the agency. *Cf. Dougherty v. Human Serv. Dep't,* 91 *N.J.* 1, 12 (1982)

(remanded for agency to determine whether waiver of a regulation in plaintiff's case served purpose of statute); *Texter v. Human Serv. Dep't,* 88 *N.J.* 376 (1982) (remand for agency to consider amending income eligibility standards). On remand, the agency in a proper exercise of its authority would resolve the conflict by clarifying its policy and by providing Denton a fair opportunity to demonstrate that her law degree fell within the permissible range of degrees that would satisfy the educational requirement under this clarified policy. Because the majority upholds the determination of the Commission without a remand, I dissent from the opinion of the Court.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER and GARIBALDI—4.

*For remandment*—Justices POLLOCK, HANDLER and O'HERN—3.