**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1871-18T3

IN THE MATTER OF
COMMUNICATION
OPERATOR, SECURED
FACILITIES, DEPARTMENT
OF CORRECTIONS,
HUDSON COUNTY

_____

Submitted April 28, 2020 - Decided August 27, 2020

Before Judges Accurso and Rose.

On appeal from the New Jersey Civil Service
Commission, Docket No. 2019-202.

William D. Sayers, attorney for appellant Hudson
County PBA Local 109.

Chasen Lamparello Mallon & Capuzzo, PC, attorneys
for respondent County of Hudson (Cindy N.
Vogelman, of counsel and on the brief; Qing Hua Guo,
on the brief).

Gurbir S. Grewal, Attorney General, attorney for
respondent Civil Service Commission (Pamela N.
Ullman, Deputy Attorney General, on the statement in
lieu of brief).

PER CURIAM

Hudson County PBA Local 109 appeals from a final decision of the Civil Service Commission on an enforcement request by its Division of Agency Services relating to the assignment of duties to civilian employees in the Hudson County jail. We affirm, substantially for the reasons expressed by the Commission in its clear and comprehensive decision of November 21, 2018.

This job classification dispute has its genesis in Hudson County's closure of its juvenile detention facility in 2015. When Hudson County shuttered the facility, a number of juvenile detention officers were transferred to the county jail to perform civilian duties. Shortly thereafter, PBA Local 109, the collective bargaining unit representing county correction officers, complained to the Civil Service Commission's Division of Agency Services that the transferred employees were performing custodial duties appropriately performed only by county correction officers. Specifically, the union complained that former juvenile detention officers working in the control room at the jail as communications operators, were performing tasks, such as "observation of the entrance area of the facility" and "observation and regulation of inmate movements," reserved to corrections officers.

A-1871-18T3

Agency Services wrote to the County advising that those duties, which "mirror the Examples of Work contained in the job specification for the title of County Correction Officer," "must be performed by custody staff, i.e., individuals in the county correction officer ranks," and directed it to "immediately remove" such duties from staff serving in civilian titles. Agency Services warned that failure to do so would result in referral of the matter to the Civil Service Commission for enforcement.

The County quickly pushed back, asserting that the communications operators in the control room only opened the doors and gates of the facility at the request of a correction officer or supervisor, and thus those civilian employees were not performing tasks reserved to corrections officers.

In 2018, the union again complained to Agency Services about the work of the communications operators, submitting a certification from the president of PBA Local 109, a corrections officer in the facility, that corrections officers traditionally serve as communications operators in the jails throughout the State, and that he had "personally observed the communications operators control the movements of inmates, civilian personnel and uniformed staff from the control rooms by simply opening or closing doors without any Orders from uniform or supervisory staff." That complaint prompted Agency Services to

3

file this enforcement action with the Civil Service Commission requesting that the Commission enforce the Agency Services' 2016 decision precluding the "routine assignment of inmate control to Communications Operators, Secured Facilities."

In response to the union's allegations, the County submitted a certification from the Director of the County's Department of Corrections and Rehabilitation about the job duties of the former juvenile detention officers now serving as communications operators, secured facilities. He noted the job description for those communications operators expressly provides that they perform "a variety of technical clerical and communications functions" under "the direction of a custody supervisor or other supervisory official in the Department of Corrections facility." Included as "examples of work," the job description states: "Opens and closes security doors/gates and distributes security and other equipment other than firearms, chemical agents or mechanical restraints under the supervision of a custodial supervisor."

The director averred that the Department's policy and post orders were "in full conformance" with the job description and the Agency Services supervisory protocol from 2016. The Director expressly noted that

> [a]ll inmate movement is conducted with the approval
> and under the supervision of a law enforcement officer

4

(corrections officer).  The communication operators merely operate the mechanics of pushing a button and[] documenting such movement in the log book. Policy CUS.03:III.B.1(c) provides, in pertinent part: ". . . [c]ell and housing doors are only to be opened at the direction of the Housing Unit Officer or Supervisor."  Untrained civilians do not act in a supervisory or directory capacity in the movement of inmates throughout the facility.  They are supervised and "greenlit" by law enforcement officers (corrections officers).

District 1199J, the union representing "the title of Communication Operator, Secured Facilities in Hudson County," submitted a letter agreeing with the County that the individuals serving as communications operators in Hudson's county jail "do not open doors without orders from uniform or supervisory staff" and "do not interact with inmates or detainees."  District 1199J asserted the communications operators were "only performing functions within the scope of their job specifications," which "do not interfere with the duties of correction officers in any way."

PBA Local 109 submitted an additional certification from the president of the union averring that the control room posts currently staffed by the civilian communications operators in the Hudson jail were "traditionally" staffed "by corrections officers in Hudson County prior to 2015" and the closing of the juvenile detention facility.  The president attested to his

5

understanding "that no other County or State jail facilities in the State of New Jersey currently employ civilian Communications Officers in control rooms without trained corrections officers also physically present in the control rooms." He claimed that "[i]n the dozens of times" he'd worked an overtime shift on a housing unit in 2018, he'd "never been contacted by a control room Communications Operator to ask for authorization or specific direction for opening a door for an inmate" and that "the volume of inmate movement in the facility on a daily basis" made such direction "not practical." He again averred that the communications officers in the Hudson jail "are not contacting the correction officers before they open doors in the facility" and "are in fact controlling and monitoring inmate movement in the facility."

After having considered those submissions, the Commission found Hudson County's policies and post orders were entirely consistent with the job specification for Communications Operator, Secured Facilities. Relying on a 1996 decision by the former Commissioner of Personnel,[1] In the Matter of Senior Corr. Officer & Commc'ns Officer, Dep't of Corr., Commissioner of Personnel (Sept. 20, 1996), ruling that the "opening and closing of security

_____

[1] The Department of Personnel was abolished by amendment to N.J.S.A. 11A:11-2, effective June 29, 2012, which also continued and transferred certain powers to the Civil Service Commission.

doors and gates upon orders or supervision of a custodial supervisor are not inappropriately assigned to the Communications Operator job classification," the Commission found N.J.A.C. 10A:3-3,1 did not preclude civilian personnel from performing those tasks at the direction of a custodial supervisor.

As to the charge that the communications operators at the Hudson jail were opening doors on their own initiative without such supervision, the Commission found such acts would be inconsistent with Hudson's policy, that the union had failed to provide any "specific examples of such behavior," had never complained of any specific violations of the policy or ever grieved the issue, and had "presented no evidence that Hudson's policies are not consistent with the duties that can be performed by a Communications Operator[], Secured Facilities." The Commission ordered the County to "continue strictly following its policy to ensure that Communication Operators, Secured Facilities, under supervision on a custodial supervisor, open and close doors/gates in the facility."

PBA Local 109 appeals, arguing that the commission failed to address "whether the title of communications operator should be permitted to be assigned to the control rooms of an adult corrections facility, as such assignment necessarily entails performance of custodial duties." Somewhat

7

undercutting that first point, the union also contends the Commission erred in relying "on an unpublished and undisclosed 1996 administrative letter ruling to improperly endorse the assignment of civilian communication operators in prison control rooms." It also argues the decision was arbitrary and capricious "as it did not address the facts and arguments submitted by [PBA Local 109] regarding the title of communications operator, secured facilities," that it "was not supported by substantial credible evidence in the record, as the record showed that communications operators were performing prohibited custodial duties in violation of the commission's May 5, 2016 order" and, finally, that "the Commission's decision was improperly issued based on written submissions, as the record demonstrated material disputed issues of fact that should have been referred to the Office of Administrative Law for a plenary hearing." Our review of the record convinces us that none of these arguments is of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Courts, of course, "have only a limited role to play in reviewing the actions of other branches of government. In light of the executive function of administrative agencies, judicial capacity to review administrative actions is severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8,

27 (1994) (citing <u>Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n</u>, 93 N.J. 384, 390 (1983)).  A final decision by the Civil Service Commission cannot be overturned on appeal unless it is affirmatively shown to be arbitrary, capricious, or unreasonable, or not supported by substantial credible evidence in the record as a whole.  <u>Karins v. Atl. City</u>, 152 N.J. 532, 540 (1998).  Applying those standards provides us no basis to interfere in the Commission's determination that the "opening and closing of security doors and gates upon orders or supervision of a custodial supervisor are not inappropriately assigned to the Communications Operator job classification."

The Commission did nothing more here than determine that Hudson County's policy and post orders regarding civilian employees in the communications operator, secured facilities title working in the control room of the adult correctional facility under the supervision of custody officers was appropriate and complied both with N.J.A.C. 10A:31-1 to -11, the regulations governing adult county correctional facilities and its prior decision addressing the same issue in 1996.  The union offers no reason to impugn the agency's obviously long-standing position that there is nothing inappropriate about communication operators opening and closing the doors and gates from the control room of a county jail under the supervision of custodial staff.

A-1871-18T3

The Commission's determination that the union did not present sufficient evidence that the County was violating its policy by permitting communications officers to operate the doors of the facility without supervision by the custodial staff was not unreasonable, given the union's failure to present specific examples of any such violation. The decision, of course, does not preclude the union from presenting such evidence in the future, either by referring any violations for investigation and possible discipline or by filing a grievance in the ordinary course.

As PBA Local 109 has not affirmatively shown the Commission's decision that civilians serving as communication operators in Hudson's county jail may appropriately operate the gates and doors of that facility under the supervision of the custody staff to be arbitrary or unreasonable or lacking support in the record, we affirm.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1871-18T3