**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1048-22

IN THE MATTER OF HIGBEE
BEACH RESTORATION
PROJECT, TOWNSHIP OF
LOWER CAPE MAY COUNTY,
NEW JERSEY, OFFICE OF
COASTAL ENGINEERING
PROJECT NO. 4299-20.

Argued October 4, 2023 – Decided January 5, 2024

Before Judges Currier, Firko and Susswein.

On appeal from the New Jersey Department of Environmental Protection.

William J. O'Kane, Jr., argued the cause for appellant Mount Construction, Inc. (Archer & Greiner, PC, attorneys; William J. O'Kane, Jr., and Christopher M. Terlingo, on the briefs).

Kathrine Motley Hunt, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Kathrine Motley Hunt and Jason Brandon Kane, Deputy Attorney General, on the brief).

Richard Wayne Hunt argued the cause for respondent A.P. Construction, Inc. (Parker McCay, PA, attorneys; Richard Wayne Hunt and Sean T. Fannon, on the brief).

PER CURIAM

Unsuccessful bidder Mount Construction, Inc. (Mount) appeals from the final decision of the New Jersey Department of Environmental Protection (DEP) denying Mount's protest of DEP's decision to award a contract for a complex project (Project) to A.P. Construction, Inc. (A.P.). The Project involves construction of a berm with stormwater control structures, restoration of dunes, and construction and installation of certain public amenities in the Higbee Beach area of Lower Township in Cape May County. Mount contends that DEP's evaluation of the bid prices was subjective and the decision to award the Project contract to A.P. was arbitrary, capricious, and unreasonable. After a review of the contentions in light of the facts and applicable principles of law, we affirm.

In May 2022, DEP's Office of Coastal Engineering (OCE) issued an advertisement for bids for the Project. According to the bid specifications, the Project was intended to "restore[]" an "area of the Higbee Beach Wildlife Management Area"; the work encompassed "earthwork, grading, dynamic compaction, seeding and planting, trail enhancement and creation, construction of water control structures, pedestrian bridge construction, boardwalk

2

construction, wildlife viewing blinds[,] and other incidentals associated with the work."  The bid package included 140 pages of design plans for the construction to which bidders were required to conform.

All bidders required pre-qualification by the OCE and Department of Treasury, Division of Property Management and Construction (DPMC).  In addition, bidders were required to substantiate their construction experience, including proof they had previously accomplished "at least two (2) projects each entailing berm construction" and "at least two (2) projects each with a minimum of twenty (20) acres in size within wetlands or tidal waters entailing wetland restoration or construction and required plantings."  According to the advertisement, bidders could submit resumes of bidder and subcontractor representatives, "but only the most experienced as demonstrated through the number and type of previous similar projects overseen, will be scored, and be considered in the evaluation."  Bidders were also required to provide an "overall sequencing/site management plan" including "detail of action, order of operations, and management" for "the major facets of the Project," such as berm construction, wetland restoration and planting, and "Plant Contingency."

The advertisement informed bidders that "the winning bid" would be determined by an "Evaluation Committee" and the Director of the Division of

Resilience Engineering and Construction (DREC Director). The DREC Director "reserve[d] the right to waive minor irregularities or omissions in a bid" and to waive a non-material requirement. The DREC Director also "reserve[d] the right to reject any or all bids, or to award whole or in part if deemed to be in the best interest of the State to do so."

Section 1:08 of the advertisement stated that "[b]ids shall be compared and awarded based on the 'price and other factors' determination of the Evaluation Committee, which w[ould] consider the cost proposals" and "the [b]idder's construction experience" including its "berm construction experience," "wetland restoration and planting experience," "dewatering experience," and "site remediation experience and qualification" as well as the bidder's "overall sequencing/site management plan" and "overall presentation . . . of the [b]id." With respect to the evaluation of bidders' cost proposals, Section 4:06.1 of the advertisement stated that:

> The pricing evaluation methodology will be date-stamped and entered into the record system along with the rest of the grading system and weighted maximum point totals before solicitation. If any changes or revisions are to be made to the evaluation process, it will occur during the solicitation phase and will be recorded in an Addendum. No changes are to be made upon receipt of bids on the bid opening date.

A-1048-22

After receiving questions from bidders, OCE issued an addendum and clarification.  In response to a request to provide the "grading system and weighted maximum point totals," OCE declined to provide additional information, and referred bidders to the language in Sections 1:08 and 4:06 of the bid advertisement.  The bid submission deadline was also extended.

On June 28, 2022, OCE received bid proposals for the Project from four contractors:  Mount, A.P., Abbonizio Construction, Inc. (Abbonizio) and JPC Group, Inc. (JPC).  The total cost proposals of each of the bidders, from highest to lowest, were as follows:

> A.P.       $37,503,858
>
> JPC        $29,962,365
>
> Mount      $29,352,731
>
> Abbonizio  $28,717,058

The "four proposals were deemed responsive" by the DEP Project Manager and "forwarded to the [E]valuation [C]ommittee."

Mount was prequalified by OCE and DPMC.  Its bid proposal listed three previous projects under "Wetlands Restoration and Planting Construction experience and qualifications"—one project involved eighty acres, the second project involved eight acres and the third project entailed six acres of wetlands

restoration.  Mount also provided four pages of tables with information about its previous construction projects, including berm and dewatering construction, and site remediation.  Although Mount included the names of contractor representatives, it did not provide resumes for the representatives.  Mount did not provide a sequencing or site management plan.

A.P. was also prequalified.  Its bid proposal provided descriptions of two previous berm construction projects and four previous wetlands projects it or its named subcontractors had completed, all of which were more than twenty acres.  A.P. also listed previous dewatering projects and site remediation projects it had performed and provided resumes of its contractor representatives for all the listed projects.  A.P. submitted an overall sequencing/site management plan as well as sequencing/site management plans for the individual aspects of the Project.

The Evaluation Committee consisted of seven members, all DEP employees—with two members from OCE, two members from the Office of Dam Safety, and one member each from the Office of Natural Resources Restoration (ONRR), the Division of Fish and Wildlife, and the Bureau of Site Management.  Evaluators were instructed that communication between

6

committee members or with bidders about the bids or the Project was "strictly forbidden."

Prior to review, the bidders' names were redacted from the proposals and the cost portion of each proposal was separated from the experience portion, to be evaluated separately. Evaluators were instructed to score each bid proposal based on a maximum possible 150 points, with the cost proposal scored as a maximum of 100 points, and the bidders' experience and other factors scored as a maximum of fifty points. Cost proposals were assigned a number (one through four) and the experience portions were assigned a letter (A through D), so that evaluators did not know the relationship between the cost proposal and the amount of experience listed in the particular bid.

With respect to the cost proposals, evaluators were instructed that, out of the 100 possible points, a maximum of seventy points could be awarded for the total bid price; a maximum of ten points each could be awarded for the bid prices for berm construction and "General Work"; and a maximum of five points each could be awarded for the bid prices for upland and marsh plantings and foundational dewatering. The evaluators were given detailed instructions on how to evaluate the different cost categories. For example, the instructions for evaluation of the "General Work" category stated:

7

General work is included in the total bid price, but it is also crucial to evaluate this independently. This is because Contractors have been known to "front-load" their General Work bid since it is a lump sum item. A heavy General Work bid price can be unfavorable to OCE due to the amount of money that must be initially paid to the Contractor and will increase the likelihood for disputes on other items as the job progresses.

With respect to the fifty possible points for bidder experience and other factors, evaluators were instructed to award a maximum of sixteen points for the bidder's berm construction experience; a maximum of ten points each for the bidder's wetland restoration and planting experience, and dewatering experience; a maximum of eight points for the bidder's overall sequencing/site management plan; a maximum of four points for the bidder's site remediation experience; and a maximum of two points for the bidder's "Overall Presentation."

All four bids were evaluated under the identified scoring criteria. The committee awarded A.P. a total score of 758 (447 price, 311 experience); Abbonizio received a total score of 704.25 (547 price, 157.25 experience); Mount had a total score of 661 (500 price, 161 experience); and JPC received a total score of 632.25 (529 price, 103.25 experience). The overall scoring for the four bids and the detailed scoring breakdown for A.P. and Mount is attached as an Addendum to this opinion.

On August 22, 2022, Erick Doyle, OCE Bureau Chief, and David Bean, ONRR Bureau Chief, sent a memorandum to the DREC Director attaching the bid evaluation results for the Project. The memorandum stated that five of the seven Evaluation Committee members ranked A.P. as having "the highest overall score . . . based on the criteria set forth." It further stated that although A.P.'s

> proposal was the costliest of those evaluated, [A.P.]'s contractor representative and contractor experience regarding earthen berm construction, wetlands and planting, dewatering, and site remediation consistently outranked all other bid submissions. [A.P.] provided detailed experience documentation in a concise manner consistent with the requirements detailed in Section 1:08. Furthermore, the three other bid proposals were not concise bid packages demonstrating sufficient quality of experience that was specifically outlined within the bid specification which was essential for the evaluation process. To this, proposal packages lacked detailed information, such as previous project experience for Contractors or Subcontractors, or sequencing plans and affidavits. These issues were reflected in the Committee Evaluations scoring for experience and qualifications.
>
> Thus, in accordance with N.J.A.C. 17:12-2.7, the evaluators recommended [A.P.]'s bid as the "most advantageous to the State, price and other factors considered."

Doyle and Bean "concur[red] with the . . . [E]valuation [C]ommittee's results" and recommended DREC award A.P. the contract for the Project.[1]

On September 1, 2022, the DREC Director issued a memorandum to all bidders, advising the OCE had concluded its evaluation of the bids received for the Project, and that "[f]ive of the seven evaluators granted A.P. . . . the highest overall score . . . ." The DREC Director stated his review of the bid packages and committee members' evaluations and recommendations reflected the "analysis and ranking of the four bids" was "appropriate" and he concurred with the evaluation committee's recommendation. The DREC Director informed the bidders of "OCE's decision . . . to award" the Project contract to A.P.

Mount filed a formal protest of the award of the Project contract, arguing the award to A.P. was "arbitrary, capricious and/or unreasonable due to th[e] exorbitant cost of [A.P.]'s bid," which was $8.2 million more than Mount's bid. Mount also challenged the evaluation committee's determination that it had not demonstrated sufficient experience in its bid documents. Mount later supplemented its bid protest, asserting that A.P.'s bid was materially defective

---

[1] Abbonizio subsequently withdrew its bid from consideration because its "suppliers and subcontractors ma[de] several price increases [after] their original quotation."

because A.P. was not prequalified to perform "Special Miscellaneous Work" and A.P. had not submitted certain financial forms.

On November 18, 2022, DEP issued a final agency decision denying Mount's bid protest and affirming the award of the contract to A.P. DEP stated it had the authority to award the Project contract under N.J.S.A. 12:6A-1 and -2, which authorizes DEP "to repair, reconstruct, or construct bulkheads, seawalls . . . dunes and any or all appurtenant structures" on the Atlantic Ocean "shore front" in New Jersey.

DEP explained that "[t]o ensure the selected contractor met the specific qualifications and experience necessary to conduct the highly specialized work for this Project, OCE issued the solicitation under a 'most advantageous to the State, price and other factors' award standard instead of a 'lowest responsive bidder' standard," citing to N.J.S.A. 52:34-12(a)(g). DEP stated that factors such as "the bidder's demonstrated earthen berm construction experience, wetland restoration and planting experience, dewatering experience, and site remediation experience, and overall sequencing/site management planning"

> were selected for evaluation because successful implementation of this Project of this size and scope requires that a contractor have demonstrated experience successfully implementing a dewatering system in tidally influenced areas, constructing an earthen berm or dike in similar conditions, managing the overall

11

sequencing/site management and phasing of such a large project while adhering to all permit restrictions and requirements, have the experience and expertise regarding the various wetland restoration, planting, and seeding requirements and timing restrictions, and managing a large-scale project in both cost and overall size.

DEP disputed Mount's claims that A.P. was not prequalified, noting that "both [A.P.] and Mount met the prequalification requirements" set forth in the bid advertisement. DEP also rejected Mount's claims that A.P. had not submitted certain required forms, finding that the two forms A.P. did not submit were not required to be provided with its bid. Therefore, "the fact that neither was included did not constitute a defect—material or not—that the DEP waived."

DEP found the evaluation committee gave A.P. "the highest score, price and other factors considered" and had given Mount "fewer points in two categories, largely because it did not meet two material components of the solicitation: wetlands experience and sequencing plans." Specifically, Mount only provided information about one previous wetlands project that met the minimum-required twenty-acre size, while A.P. "submitted two projects in this category, one of which included [twenty-five plus] acres of wetland construction while the other project contained over [twenty-one] acres of newly constructed

wetlands." In addition, DEP stated "[E]valuation [C]ommittee members also consistently found that Mount did not supply any sequencing/phasing plans as required by the specifications, and the committee members scored Mount's bid accordingly." A.P. had included the required sequencing plans.

According to DEP, "Mount's failure to submit the required sequencing plans, coupled with its lack of experience regarding wetland restoration and planting, did not demonstrate to [DEP] that it could successfully complete the Project." "Thus, since Mount's proposal failed to conform to the bid solicitation's specifications, [DEP] awarded the contract to [A.P.], the highest-scoring responsible bidder, price and other factors considered."

On November 22, 2022, Mount requested DEP stay the Project contract award pending appeal. DEP denied Mount's request. We permitted Mount to file an emergent motion seeking a stay of the Project contract award and thereafter granted Mount's motion for a stay pending appeal on January 6, 2023.

On appeal, Mount asserts DEP acted arbitrarily, unreasonably, and capriciously in relying on the Evaluation Committee's "subjective" scoring; the evaluators ignored Mount's contractor representatives' experience; and its "bid was not materially defective." Mount does not challenge the propriety of DEP's

13

use of the "most advantageous to the State, price and other factors" standard under N.J.S.A. 52:34-12(a)(g).

Our review of "administrative actions is severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994) (citing Gloucester Cnty. Welfare Bd. v. N.J. Civ. Serv. Comm'n, 93 N.J. 384, 390 (1983)). We "must defer to an agency's expertise and superior knowledge of a particular field." Thurber v. City of Burlington, 191 N.J. 487, 502 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." George Harms, 137 N.J. at 27. An "[a]gency action will not be overturned unless the action is arbitrary, capricious, or unreasonable." In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 279-80 (2018) (citing Barrick v. State, Dep't of Treasury, 218 N.J. 247, 259 (2014)). "The burden of demonstrating that the agency's action was arbitrary, capricious[,] or unreasonable rests upon the person challenging the administrative action." Seigel v. N.J. Dep't of Env't Prot., 395 N.J. Super. 604, 613 (App. Div. 2007).

A-1048-22

"[W]e apply de novo review to an agency's interpretation of a statute or case law." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing Toll Bros. Inc., v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

Our Supreme Court has consistently held that contract awards under N.J.S.A. 52:34-12(a)(g) should be reviewed under the "gross abuse of discretion standard." Barrick, 218 N.J. at 258 (citing Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., Dep't of Treasury, 99 N.J. 244, 252-53 (1985); Com. Cleaning Corp. v. Sullivan, 47 N.J. 539, 548-49 (1966)). This includes contracts awarded under N.J.S.A. 52:34-12(a)(g), which permits a contract to be awarded "to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the State, price and other factors considered." N.J.S.A. 52:34-12(a)(g); Barrick, 218 N.J. at 258; Keyes Martin, 99 N.J. at 252-53. Under this higher standard, an appellate court "will not interfere in the absence of bad faith, corruption, fraud or gross abuse of discretion." In re Protest of the Award of the On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 592 (App. Div. 1995) (quoting Com. Cleaning, 47 N.J. at 549).

In turning to Mount's assertions, we are satisfied Mount has not demonstrated the evaluation of the cost proposals was not objective. We are unpersuaded by and find no precedential support for its argument that an

objective evaluation of price requires a higher bid price to receive a lower score in all instances, or that all bid prices must be scored according to the percentage differences in price between bids. To the contrary, the Evaluation Committee was given a structured evaluation template and criteria to score the costs proposals. Furthermore, the instructions advised that prices for the different line items could be evaluated differently. For example, a high "General Work" price even as part of an overall lower bid price could result in a lower score because "a heavy General Work bid price can be unfavorable to OCE due to the amount of money that must be initially paid to the Contractor and will increase the likelihood for disputes on other items as the job progresses." The record is devoid of any evidence that the evaluators did not assess the proposals objectively.

Mount next contends DEP ignored its contractor representatives' experience, pointing to three evaluators' score of zero points (out of a possible two). However, two evaluators gave Mount the maximum two points, and two evaluators gave Mount one point for that category. See Addendum Table #3. Furthermore, Mount's proposal only included a spreadsheet listing its prior projects and the names of its contractor representatives. In contrast, A.P.'s proposal included "detailed resumes and descriptions of the experience of its

16

contractor representatives."  The divergent submissions provided a reasonable basis for the difference in individual scores.  In any event, Mount's score of six points (out of a maximum of fourteen) for its contractor representative site remediation experience was only seven points less than A.P.'s score of thirteen in that category, but A.P.'s total score of 758 was 97 points higher than Mount's total score of 661.  Even if Mount had received the maximum possible fourteen points for contractor representative site remediation experience, it would not have changed the Evaluation Committee's recommendation.

We are satisfied Mount has not demonstrated DEP grossly abused its discretion in awarding the contract to A.P. as it has not established the evaluation process was arbitrary, capricious, or unreasonable.  On-Line Games, 279 N.J. Super. at 592.

In light of our determination to affirm the bid award, we need not address Mount's assertion that DEP erred in finding Mount's bid was materially defective.  DEP's materiality determination was made in response to Mount's bid protest, well after the evaluation of the bids and the bid awards.  Since we have concluded DEP was not arbitrary or capricious in its award of the contract to A.P., it is immaterial what statements were made following the close of the bidding process.

Affirmed.  The order staying the award of the contract is vacated.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1048-22

Table 1
Total Scores for All Bidders

| Eval-uator | A.P. (Bidder 2/C) (Total Price: $37,503,858) | | | JPC (Bidder 4/A) (Total Price: $29,962,365) | | | Mount (Bidder 1/B) (Total Price: $29,352,731) | | | Abbonizio (Bidder 3/D) (Total Price: $28,717,058) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Price | Exp. | Total | Price | Exp. | Total | Price | Exp. | Total | Price | Exp. | Total |
| 1 | 67 | 41 | 108 | 82 | 16 | 98 | 79 | 28 | 107 | 82 | 17 | 99 |
| 2 | 58 | 49.5 | 107.5 | 79 | 2.25 | 81.25 | 54 | 16 | 70 | 58 | 11.75 | 69.75 |
| 3 | 64 | 50 | 114 | 91 | 30 | 121 | 86 | 39 | 125 | 93 | 37 | 130 |
| 4 | 64 | 47 | 111 | 43 | 8 | 51 | 64 | 17 | 81 | 82 | 23 | 105 |
| 5 | 42 | 28 | 70 | 54 | 26 | 80 | 49 | 26 | 75 | 45 | 29 | 74 |
| 6 | 77 | 49 | 126 | 83 | 8 | 91 | 84 | 17 | 101 | 92 | 23 | 115 |
| 7 | 75 | 46.5 | 121.5 | 97 | 13 | 110 | 84 | 18 | 102 | 95 | 16.5 | 111.5 |
| Total | 447 | 311 | 758 | 529 | 103.25 | 632.25 | 500 | 161 | 661 | 547 | 157.25 | 704.25 |

A-1048-22

Table 2
A.P. Score Breakdown

| Eval-uator | A.P. (Bidder 2/C) (Total Price:$37,503,858) | | | | | | | | | | | |
| | Price | | | | | Experience | | | | | | |
| | Total Bid (70 max) | Berm (10 max) | Plant-ing (5 max) | De-water-ing (5 max) | Gen. Work Exp. (10 max) | Berm (16 max) | Plant-ing (10 max) | De-water-ing (10 max) | Seq./Site Mgmt. Plan (8 max) | Contractor Site Remed. Exp. (2 max) | Contractor Rep. Site Remed. Exp. (2 max) | Overall (2 max) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 49 | 10 | 3 | 5 | 0 | 9 | 10 | 10 | 6 | 2 | 2 | 2 |
| 2 | 41 | 4 | 4 | 5 | 4 | 16 | 10 | 10 | 7.5 | 2 | 2 | 2 |
| 3 | 41 | 10 | 5 | 3 | 5 | 16 | 10 | 10 | 8 | 2 | 2 | 2 |
| 4 | 40 | 10 | 5 | 2 | 7 | 14 | 9 | 10 | 8 | 2 | 2 | 2 |
| 5 | 30 | 4 | 2 | 2 | 4 | 8 | 5 | 7 | 4 | 2 | 1 | 1 |
| 6 | 52 | 10 | 5 | 2 | 8 | 16 | 10 | 10 | 7 | 2 | 2 | 2 |
| 7 | 55 | 5 | 5 | 3 | 7 | 14 | 9.5 | 10 | 7 | 2 | 2 | 2 |

A-1048-22

# Table 3
## Mount Score Breakdown

| Eval-uator | Mount (Bidder 1/B) (Total Price: $29,352,731) | | | | | | | | | | | |
| | Price | | | | | Experience | | | | | | |
| | Total Bid (70 max) | Berm (10 max) | Plant-ing (5 max) | De-water-ing (5 max) | Gen. Work Exp. (10 max) | Berm (16 max) | Plant-ing (10 max) | De-water-ing (10 max) | Seq./ Site Mgmt. Plan (8 max) | Contractor Site Remed. Exp. (2 max) | Contractor Rep. Site Remed. Exp. (2 max) | Overall (2 max) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 68 | 6 | 5 | 0 | 0 | 14 | 4 | 6 | 0 | 1 | 2 | 1 |
| 2 | 33 | 10 | 2 | 3 | 6 | 8 | 2.5 | 2.5 | 0 | 2 | 0 | 1 |
| 3 | 68 | 7 | 4 | 1 | 6 | 16 | 8 | 10 | 0 | 2 | 2 | 1 |
| 4 | 40 | 8 | 5 | 4 | 7 | 5 | 5 | 4 | 0 | 2 | 0 | 1 |
| 5 | 35 | 5 | 2 | 2 | 5 | 8 | 3 | 7 | 4 | 2 | 1 | 1 |
| 6 | 57 | 10 | 4 | 5 | 8 | 5 | 3 | 6 | 0 | 1 | 1 | 1 |
| 7 | 60 | 10 | 4 | 5 | 5 | 6 | 5 | 5 | 0 | 1 | 0 | 1 |

A-1048-22