**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5072-18T3

SHAZAM MEIGHOO,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted September 15, 2020 – Decided September 25, 2020

Before Judges Yannotti and Mawla.

On appeal from the New Jersey Department of Corrections.

Shazam Meighoo, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Beonica A. McClanahan, Deputy Attorney General, on the brief).

PER CURIAM

Shazam Meighoo is an inmate in the State's correctional system. He appeals from a final determination of the New Jersey Department of Corrections (NJDOC), which found he possessed or introduced a weapon into the correctional facility and imposed disciplinary sanctions. We affirm.

In June 2019, Meighoo was incarcerated in Northern State Prison (NSP). He is serving an eighteen-year sentence as a result of his convictions for aggravated manslaughter, unlawful possession of a weapon, and endangering the welfare of a child. Meighoo will not be eligible for parole until March 15, 2030.

On June 3, 2019, Officer J. Pinheiro conducted a random search of Meighoo's cell. Pinheiro observed a plastic bin, labeled "S. Meighoo," inside the cell. Upon searching the bin, the officer discovered a razor blade, which had been melted onto a pen and wrapped in a white cloth. Pinheiro then notified Sergeant J. Reynolds who compiled the preliminary incident report.

On June 4, 2019, Meighoo was charged with committing prohibited act *.202, possession or introduction of a weapon such as, but not limited to, a sharpened instrument, knife, or unauthorized tool, in violation of N.J.A.C.

10A:4-4.1(a).[1] Sergeant O. Rodriguez served the charge on Meighoo and he was placed in prehearing detention.

The NJDOC investigated the charge, found it had merit, and referred the matter to a Departmental Hearing Officer (DHO) for further action. Meighoo pleaded not guilty to the charge and provided written statements in which he denied the weapon belonged to him. In his written statements, Meighoo asserted, among other things, that his cellmate "was always making this kind of stuff . . . ."

The hearing was initially scheduled for June 5, 2019, and the NJDOC granted Meighoo's request for the assistance of counsel substitute. The hearing was then rescheduled several times to consider Meighoo's requests for a polygraph examination and a fingerprint analysis of the weapon. The Administrator of NSP denied both requests, reasoning that the DHO could adequately address any issues of credibility at the hearing.

Meighoo also requested video footage of his cell recorded between 5:45 p.m. and 8:30 p.m. the night before the weapon was found. Meighoo's counsel substitute asserted that Meighoo suspected the weapon may have been "planted"

---

[1] We note that "[p]rohibited acts preceded by an asterisk (*) are considered the most serious and result in the most severe sanctions . . . ." N.J.A.C. 10A:4-4.1(a).

in his cell during the time requested, while Meighoo was attending religious services. The DHO denied the request for the video footage.

The hearing took place on June 13, 2019. Meighoo declined the opportunity to call witnesses to testify on his behalf as well as the opportunity to confront or cross-examine adverse witnesses. The DHO reviewed the staff's reports, heard testimony by staff members, examined the bin where the contraband was found, and considered Meighoo's statements. After reviewing all of the evidence, the DHO found Meighoo guilty of the charge. The DHO explained the decision by stating that Meighoo had offered no evidence to support his allegations against his cellmate or counteract the staff reports.

The DHO imposed the following sanctions: 180 days in administrative segregation, the loss of 181 days of commutation time, and the loss of 30 days of recreational privileges. The DHO stated that the sanctions were warranted to deter possession of weapons in prison. The DHO noted that the weapon found in Meighoo's cell could have been used to cause serious injury.

On June 17, 2019, Meighoo filed an appeal with the administrator of NSP. He asserted he was not guilty of the charge, and that he had been denied due process because the NJDOC did not grant his requests for polygraph examination, fingerprint analysis, and video footage.

The Assistant Superintendent of NSP found that all procedural safeguards had been followed and that there was substantial evidence to support the finding of guilt. However, the Assistant Superintendent modified the sanctions based on Meighoo's disciplinary history, reducing the time to be served in administrative segregation from 180 to 91 days. This appeal followed.

On appeal, Meighoo argues the NJDOC violated his right to due process by erroneously shifting the burden of proof to him and denying him evidence needed for his defense. He further argues he was denied due process because the NJDOC did not grant his requests for a polygraph examination, fingerprint analysis, and video footage of his cell.

The scope of our review of a final decision of an administrative agency is "severely limited." George Harms Constr. Co. v. N.J. Turnpike Auth., 137 N.J. 8, 27 (1994) (citing Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390 (1983)). We can "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." Ibid.

In an appeal from a final decision of the NJDOC in a prisoner disciplinary matter, we consider whether there is substantial evidence in the record to support the NJDOC's decision that the inmate committed the prohibited act. Blanchard

v. N.J. Dep't of Corrs., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). We also must consider whether, in making its decision, the NJDOC followed the departmental regulations governing disciplinary matters, which were adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 220-22 (1995).

We are convinced there is sufficient evidence in the record to support the NJDOC's decision that Meighoo was guilty of committing prohibited act *.202, "possession or introduction of a weapon, such as, but not limited to, a sharpened instrument, knife, or unauthorized tool." N.J.A.C. 10A:4-4.1(a)(1)(x). We are also convinced the NJDOC followed its regulations in the disciplinary process.

Here, the record shows that during a search of Meighoo's cell, the officer found a razor blade which had been melted on a pen and wrapped in a white cloth and stored in Meighoo's bin. Although Meighoo asserted the weapon did not belong to him, he submitted no evidence to substantiate that claim. The evidence supports the NJDOC's conclusion that Meighoo had, in fact, committed the prohibited act.

As noted, Meighoo contends he was denied due process because the NJDOC shifted the burden of proof to him, while denying him evidence needed

for his defense.  He asserts the DHO failed to state that the NJDOC had carried its burden of proof and did not specify the evidence relied upon for the decision. The record does not support these contentions.

On the adjudication report, the DHO identified the evidence relied upon in finding Meighoo committed the prohibited act.  The DHO noted that the evidence included the staff reports and testimony, as well as the examination of the bin where the weapon was found.

The DHO noted that Meighoo presented no witnesses or evidence to support his defense and did not seek confrontation or cross-examination of any adverse witness.  However, the DHO's adjudication report indicates that the NJDOC had the burden of proof on the charge.

Meighoo also argues that he was denied due process because the NJDOC did not grant his request for a polygraph examination.  The administrative code provides in pertinent part that:

> (a) A polygraph examination may be requested by the Administrator or designee:
>
> 1. When there are issues of credibility regarding serious incidents or allegations which may result in a disciplinary charge; or
>
> 2. As part of a reinvestigation of a disciplinary charge, when the Administrator or designee is presented with new evidence or finds serious issues of credibility.

(b) The polygraph shall not be used in place of a thorough investigation, but shall be used to assist an investigation when appropriate.

(c) Agreement by the inmate to take a polygraph examination shall not be a pre-condition for ordering a reinvestigation. An inmate's request for a polygraph examination shall not be sufficient cause for granting the request.

[N.J.A.C. 10A:3-7.1.]

It is well established that an inmate in the State's correctional system does not have an unqualified right to a polygraph examination. Ramirez v. Dept. of Corrs., 382 N.J. Super. 18, 23-24 (App. Div. 2005) (citing Johnson v. N.J. Dept. of Corrs., 298 N.J. Super. 79, 83 (App. Div. 1997)). The NJDOC's regulation "is designed to prevent the routine administration of polygraphs, and a polygraph is clearly not required on every occasion that an inmate denies a disciplinary charge against him." Ramirez, 382 N.J. Super. at 23-24.

The NJDOC's decision of whether to grant a polygraph is discretionary and will not be reversed unless arbitrary, capricious or unreasonable. Id. at 24. The NJDOC should only grant the request "when there is a serious question of credibility and the denial of the examination would compromise the fundamental fairness of the disciplinary process." Id. at 20.

Here, there was no serious issue of credibility warranting a polygraph examination. The officer reported that he found a weapon in Meighoo's bin during a random search of his cell. Meighoo claimed the weapon did not belong to him, and he stated that the weapon belonged to his cellmate. However, Meighoo presented no evidence to support his claim.

Meighoo's denial of guilt did not raise a serious issue of credibility. The administrator reasonably determined the credibility of Meighoo's claim could be addressed at the disciplinary hearing. We conclude the denial of the request did not compromise the fundamental fairness of the proceeding.

Meighoo also contends he was denied due process because the NJDOC did not grant his request for a fingerprint analysis of the weapon. Meighoo acknowledges he does not have a right to such an analysis. In any event, a fingerprint analysis would not have resolved an issue of credibility or clarified any pertinent fact.

Even if Meighoo's fingerprints were not found on the weapon, this would not necessarily warrant a finding that the weapon did not belong to him. As noted, the weapon was found in Meighoo's bin during a search of his cell. We are convinced that the denial of Meighoo's request for a fingerprint analysis of

the weapon did not compromise the fundamental fairness of the disciplinary proceeding.

In addition, Meighoo contends he was denied due process because the NJDOC did not provide him with a videotape of his cell recorded between 5:45 p.m. and 8:30 p.m. on the evening before the weapon was found. However, the sole basis for the request was Meighoo's suggestion that the weapon could have been planted in his bin at that time when he was attending religious services. The denial of the request was not arbitrary, capricious or unreasonable, and it did not adversely affect the fundamental fairness of the disciplinary proceeding.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION