**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0544-19

LUIS GARCIA, a/k/a
RICO GARCIA, LOUIS
GARCIA, and LOUIS
LUISITO,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

     Submitted March 23, 2021 – Decided April 21, 2021

     Before Judges Yannotti and Natali.

     On appeal from the New Jersey Department of Corrections.

     Luis Garcia, appellant pro se.

     Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Nicholas Falcone, Deputy Attorney General, on the brief).

PER CURIAM

Luis Garcia is presently incarcerated in the State's correctional system. He appeals from a final decision of the New Jersey Department of Corrections (NJDOC), which found that he committed prohibited act *.005, threatening another with bodily harm or with an offense against his or her person or property, in violation of N.J.A.C. 10A:4-4.1(a)(2)(ii).[1] We affirm.

On May 23, 2019, while incarcerated at New Jersey State Prison (NJSP), Garcia met with Dr. Emma Bushong, a mental-health counselor. Dr. Bushong reported that during their meeting, Garcia expressed "significant frustration" with a unit psychiatrist. According to Dr. Bushong, Garcia made statements such as, (1) "I'd never do anything to myself," (2) "[i]f you worry about anything, you should worry about someone else . . . "; and "it wouldn't be you or them, it's that one doctor." Dr. Bushong noted that Garcia did not provide any further details.

Garcia was charged with committing prohibited act *.005 and he was served with the charge. Dr. Melissa Dettore conducted a psychological evaluation of Garcia and issued a confidential report dated May 24, 2019, which

_____

[1] Prohibited acts preceded by an asterisk "are considered to be the most serious and result in the most severe sanctions." N.J.A.C. 10A:4-4.1.

A-0544-19

addressed his mental health status, level of responsibility at the time of the charge, competency to participate in a hearing, and the appropriateness of placement in administrative segregation as a sanction.

The matter then was referred to a departmental hearing officer for a hearing. Garcia pleaded not guilty and he was provided with the assistance of counsel substitute. Garcia asserted that he made the statements during a therapy session with Dr. Bushong, and he did not threaten anyone. He claimed he had just been "talking."

Garcia's counsel substitute argued that the alleged threat was not directed towards any specific individual, and there was no evidence that Garcia's "body language" indicated he would carry out the threat. The hearing officer offered Garcia the opportunity to call his own witnesses and confront adverse witnesses. He declined the offers.

The hearing officer found the special custody report clearly indicated that Garcia had been expressing his frustration with the psychologist, and that he chose not to present any evidence to support his claim that he was not threatening anyone or discredit the staff's reports. The hearing officer also determined that Garcia's words "reasonably convey the threat of

A-0544-19

harm/fear/menace to the ordinary" person, especially since "the conversation was about harm towards a specific mental health doctor."

The hearing officer found that Garcia had committed prohibited act *.005 and imposed the following sanctions: the loss of thirty days of recreation privileges and the loss of 120 days of commutation time. The sanctions also required that Garcia spend ninety-one days in administrative segregation, pursuant to N.J.A.C. 10A:4-5.1(g).

The hearing officer noted that Garcia had last been charged with a disciplinary infraction in 2016. The hearing officer reasoned, however, that the sanctions were appropriate because his "words conveyed [a] threat of harm to another person," and Garcia "must be held responsible for the words he speaks."

The Administrator at NJSP approved the loss of commutation time and the prison's classification department authorized administrative segregation. Garcia then filed an administrative appeal, arguing that his threat was not sufficiently specific to warrant discipline.

The NJSP Administrator upheld the decision, finding that the hearing officer had complied with the relevant provisions of the administrative code governing inmate discipline. The Administrator found "[t]he preponderance of

4

the evidence" supported the hearing officer's finding of guilt. This appeal followed.

On appeal, Garcia argues that he should not have been found guilty on the *.005 charge. He asserts that during his psychological counseling session, he "vented his frustration." He contends that his comments during the session do not constitute a threat because he did not threaten a specific person, identify a specific person, or mention "any specific action."

Garcia further argues that he was sanctioned with placement in administrative segregation for a period longer than the twenty-one days permitted for inmates with special needs. He also contends the Administrator should not have denied his appeal and the NJDOC's final decision is arbitrary, capricious, and unreasonable.

The scope of our review of a final decision of an administrative agency is "severely limited." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994) (citing Gloucester Cty. Welfare Bd. v. N.J. Civil Serv. Comm'n, 93 N.J. 384, 390 (1983)). We can "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." Ibid.

In an appeal from a final decision of the NJDOC in a prisoner disciplinary matter, we consider whether there is substantial evidence in the record to support the NJDOC's decision that the inmate committed the prohibited act. Blanchard v. N.J. Dep't of Corrs., 461 N.J. Super. 231, 237-38 (App. Div. 2019) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). We also must consider whether, in making its decision, the NJDOC followed the departmental regulations governing disciplinary proceedings, which were adopted to afford inmates procedural due process. See McDonald v. Pinchak, 139 N.J. 188, 194-95 (1995); Jacobs v. Stephens, 139 N.J. 212, 219-22 (1995).

An adjudication of guilt on a disciplinary charge must be supported by "substantial evidence." N.J.A.C. 10A:4-9.15(a). "Substantial evidence" has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." Figueroa v. N.J. Dep't of Corrs., 414 N.J. Super. 186, 192 (App. Div. 2010) (quoting In re Pub. Serv. Elec. & Gas Co., 35 N.J. 358, 376 (1961)).

In Jacobs, the inmate was charged with "threatening another with bodily harm" in violation of N.J.A.C. 10A:4-4.1(a), *.005. 136 N.J. at 215. The inmate yelled profanities at the corrections officer, and the officer asked the inmate for his identification card. Id. at 216. The inmate responded, "Fuck you, I ain't

giving you shit. If you want my I.D., step in the back room." Ibid. Another witness reported that as the officer turned to walk away, the inmate stated, "come on, come on[,] I'll fuck you up." Ibid.

On appeal, the inmate argued there was insufficient evidence to support the conclusion that he threatened the officer with bodily harm. Id. at 222. The inmate asserted that while he used abusive language, he did not intend to threaten the officer. Ibid. The Court stated that "[t]he determination of whether a remark constitutes a threat is made on the basis of an objective analysis of whether the remark conveys a basis of fear." Ibid.

The Court held that a reasonable mind could conclude that the inmate had threatened the officer. Id. at 223. The inmate admitted telling the officer "to get the fuck out of [his] face" during a "heated" discussion. Ibid. Alone, this comment would be "sufficient to justify the conclusion that a threat had been made." Ibid.

The Court noted, however, that other witnesses had heard the inmate make additional threating comments. Id. at 223-24. The Court stated, "[w]hen words of an inmate are of such a nature as would reasonably convey the menace or fear of death to the ordinary hearer, then that is a threat of bodily harm and therefore punishable under N.J.A.C. 10A:4-4.1(a)*.005." Id. at 224.

Here, there is sufficient evidence in the record to support the hearing officer's finding that Garcia's remarks "convey[ed] a basis of fear." Id. at 222. As noted, Dr. Bushong reported that during her counseling session with Garcia, he stated, "I'd never do anything to myself. [I]f you worry about anything, you should worry about someone else." Dr. Bushong said Garcia specifically referred to "that one doctor."

Thus, the record supports the hearing officer's finding that Garcia's words "reasonably convey the threat of harm/fear/menace to the ordinary" person hearing those words, and that "the conversation was about harm towards a specific mental health doctor." There is sufficient evidence in the record to support the hearing officer's finding that Garcia committed prohibited act *.005.

Garcia further argues that his placement in administrative segregation for ninety-one days is not authorized under the administrative code. Prohibited act *.005 is a "Category B" offense. N.J.A.C. 10A:4-4.1(a)(2)(ii). The code provides in pertinent part that:

> A finding of guilt for any offense in Category B shall result in a sanction of no less than [ninety-one] days and no more than 180 days of administrative segregation per incident . . . unless a medical or mental health professional determines that the inmate is not appropriate for administrative segregation placement.
>
> [N.J.A.C. 10A:4-5.1(g).]

As noted previously, after Garcia was charged with the instance infraction, Dr. Dettore conducted a psychological evaluation and issued a confidential report. Dr. Dettore did not find that Garcia's placement in administrative segregation would be inappropriate. Therefore, Garcia's placement in administrative segregation, as a sanction for committing prohibited act *.005, was permitted by N.J.A.C. 10A:4-5.1(g).

We have considered Garcia's other contentions and conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0544-19